**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Salah Hassan,

      Petitioner

v.

Todd Blanche,[1] et al.,

      Respondents

Case No.: 2:26-cv-00411-JAD-MDC

**Order Granting Habeas Petition and Motion to Extend Time**

[ECF Nos. 8, 16]

Petitioner Salah Hassan is a Sudanese citizen who arrived in the United States in 2006 and was ordered removed in 2021, though his removal to Sudan was deferred under the United Nations Convention Against Torture.  He was released from custody after his removal order became final because Immigration and Customs Enforcement[2] (ICE) agents were unable to secure his removal.  But on January 19, 2026, ICE arrested Hassan, and he has been detained at the Nevada Southern Detention Center ever since.

In February 2026, Hassan filed a pro se petition for a writ of habeas corpus seeking his release from custody.  The court appointed counsel, who filed a first amended habeas petition and seeking Hassan's immediate release.  Hassan argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights.

---

[1] Todd Blanche has replaced respondent Pamela Bondi as the Acting Attorney General of the United States, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

[2] ICE has had different institutional names throughout the years.  To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Hassan was ordered removed.

I grant Hassan's habeas petition. Hassan has been detained for at least six months under his order of removal. He has shown that there is no good reason to believe that his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise. Hassan has also shown that ICE failed to follow its own regulations when it arrested him and deprived him of the process that should have accompanied his re-detention. And Hassan has demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Hassan's immediate release, subject to the conditions of his preexisting order of supervision. I also prohibit the respondents from re-detaining Hassan absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit the respondents from removing Hassan to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief for that removal.

**Background**

Salah Hassan was lawfully admitted to the United States in 2006 as a Sudanese refugee fleeing genocide.[3] He was ordered removed due to criminal convictions on February 8, 2021, and waived his right to appeal that order. Hassan was ordered removed to Sudan, but the immigration judge deferred that removal under the CAT because it is likely that he will be tortured if returned to that country.[4] Hassan was detained for approximately 90 days after his removal order was entered, but he was released because the government couldn't effectuate his removal.[5]

---

[3] ECF No. 8 at 4.

[4] *Id.*

[5] *Id.*; ECF No. 18 at 10 (government's response, agreeing that Hassan was held for 90 days following entry of his final removal order in 2021).

On January 15, 2026, Hassan was arrested for riding a train without a ticket in Weber, Utah.[6]  Four days later, Hassan was taken into ICE custody and was transferred to the Nevada Southern Detention Center.[7]  He has been detained there ever since.

**Discussion**

**A.    This court has jurisdiction over Hassan's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[8]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[9]

The government sees it differently.[10]  It argues that this court is without jurisdiction to consider Hassan's case because 8 U.S.C. § 1252(g) bars district courts from reviewing the

---

[6] ECF No. 18-2.

[7] ECF No. 18 at 2.

[8] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[9] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[10] The government filed its response late.  It moves to retroactively extend the deadline to respond, arguing that counsel was out of the office.  ECF No. 16.  That hardly satisfies the good-cause and excusable-neglect standards for extending time after the deadline passed, and the court previously warned counsel in this case that "this is the last time that attorney staffing issues or preplanned leave will be an acceptable justification for further extension of time for the respondents in this case."  ECF No. 14.  Nevertheless, the respondents filed their late response, the petitioner filed a reply, and it is this court's strong preference to resolve cases on their merits whenever possible—especially when the case involves complex immigration issues and constitutional implications like this one does.  Plus, I find that the government's response does not raise any arguments that preclude Hassan's requested relief, so my consideration of it does not prejudice Hassan.  I thus grant respondents' motion to retroactively extend time, and I consider the response filed at ECF No. 18.

decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[11] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[12]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention,[13] and "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[14]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[15] that bars challenges only to the three discrete actions enumerated in the statute.[16]

The government's § 1252(b)(9) argument fares no better.  Section 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[17]  Hassan does not challenge the decision to commence his removal proceeding or to execute his removal order but rather ICE's decision to detain him indefinitely and remove him to a third country without providing adequate notice and a hearing under the due-process clause of the U.S.

---

[11] 8 U.S.C. § 1252(g); ECF No. 15 at 2–3.  The government also mentions § 1252(b)(9) in its jurisdictional argument, but it does not argue how that subdivision applies or how it might deprive this court of jurisdiction.  So I do not consider the impact of that provision here.

[12] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

[13] *See Zadvydas*, 533 U.S. at 687.

[14] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[15] *Id.* at 996.

[16] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

[17] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

Constitution.  Because this court has jurisdiction to consider those challenges, I now adjudicate their merits.

**B.**    **Hassan has shown that he is entitled to relief on his prolonged-detention claim.**

   *1.*    *The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[18]  During that 90-day period, detention is mandatory.[19]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[20] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[21]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[22]

---

[18] 8 U.S.C. § 1231(a)(1)(B).

[19] 8 U.S.C. § 1231(a)(2)(A).

[20] *Zadvydas*, 533 U.S. at 682.

[21] 8 U.S.C. § 1231(a)(6).

[22] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

### 2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[23] To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[24] It determined that six months of post-removal-period detention is presumptively reasonable.[25] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[26] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[27] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[28]

---

[23] *Id.* at 690.

[24] *Id.* at 699.

[25] *Id.* at 701.

[26] *Id.*

[27] *Id.*

[28] *Id.* (cleaned up).

**3.** ***Hassan has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.***

Hassan has been detained for approximately 95 days since his January 2026 arrest. The government contends that this short time period forecloses his *Zadvydas* claim because his detention has not exceeded the presumptively reasonable six-month period. But Hassan responds that he was detained under his removal order in 2021 at least 90 days, and he argues that time should be cumulatively considered in the *Zadvydas* analysis. The government appears to maintain that the prior detention period is irrelevant to Hassan's prolonged detention claim, though it doesn't provide any argument or analysis to support that interpretation. Rather, several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.[29] I agree with the reasoning of those courts. *Zadvydas* presumed that detention following removal could reasonably last six months. If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis.

Hassan has been cumulatively detained for more than six months—he was detained for at least 90 days in 2021, and for 95 days in 2026, pushing his detention just beyond the presumptively reasonable six-month period. So Hassan bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the

---

[29] *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").

reasonably foreseeable future."[30]  To meet that burden, Hassan argues that ICE has been unable to remove him for five years and notes that the deferral of removal to Sudan makes it very unlikely that he can be sent there.  I find that Hassan's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Hassan's removal is foreseeable.  It merely argues, incorrectly, that *Zadvydas* doesn't apply yet because his current detention hasn't reached the six-month mark.  It does not assert that it is attempting to effectuate Hassan's removal.  It does not attach any documentation suggesting that any efforts are being made to secure his deportation to Sudan or any other country.  The government's response is woefully insufficient to show that there is a significant likelihood of Hassan's removal at all, let alone in the reasonably foreseeable future.  So I grant Hassan's petition on the ground that his continued detention exceeds the government's statutory authority under *Zadvydas*, and I order his immediate release. [31]

**C.     Hassan has shown that ICE arrested him without following its own re-detention regulations.**

Hassan also contends that ICE arrested him in a manner that violates its own regulations. To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations.  8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to

---

[30] *Zadvydas*, 533 U.S. at 701.

[31] I do not consider Hassan's separate claim that his prolonged detention violates the Fifth Amendment's due-process clause.  In *Zadvydas*, the High Court interpreted § 1231(a)(6) to prohibit prolonged detention to avoid the constitutional concerns raised by a different interpretation.  I follow in the Supreme Court's footsteps and do not reach Hassan's due-process arguments because he is entitled to the relief he seeks under *Zadvydas*'s statutory limitation.

8

enforce a removal order or to commence removal proceedings against [a noncitizen]."[32]  Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[33]  If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[34]

Hassan alleges that none of those processes was followed in his case.  He was never told why he was retained or given the opportunity to contest the revocation of his release.  The government doesn't respond to this argument.

"It is a well-known maxim that agencies must comply with their own regulations."[35]  And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[36]  It's undisputed that those regulations were not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Hassan's habeas petition on this ground, too, and I order his release on the conditions in his preexisting order of supervision.

---

[32] 8 C.F.R. § 241.4(l)(2)(iii).

[33] 8 C.F.R. § 241.13(i)(2).

[34] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

[35] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[36] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

**D.    Hassan has shown that the government's third-country-removal procedures violate due process.**

*1.    The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[37]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[38]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[39]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[40]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a

---

[37] 8 U.S.C. § 1231(b)(2)(A).

[38] 8 U.S.C. § 1231(b)(2)(E)(i–vi).

[39] 8 U.S.C. § 1231(b)(2)(E)(vii).

[40] 8 U.S.C. § 1231(b)(3)(A).

noncitizen raises CAT protections at or directly following his initial removal proceedings. It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap. It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[41] In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[42] ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[43]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[44] If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be

---

[41] ECF No. 8-5.

[42] *Id.*

[43] *Id.*

[44] *Id.*

persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[45]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[46]

  **2.**  ***ICE's third-country policy violates due process, so any attempt to remove Hassan to a third country must be preceded by notice and a meaningful opportunity to be heard.***

  Hassan contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[47]  "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[48]  The "fundamental features of due process" are notice and an opportunity to be heard.[49]

  The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[50]  It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the

---

[45] *Id.*

[46] *Id.*

[47] ECF No. 8 at 19–21.  Hassan also challenges the policy under the Administrative Procedure Act.  In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process.  *See id.* at 20.  Because Hassan's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[48] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[49] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[50] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

constitutional right to due process."[51]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[52]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[53]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[54]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[55]

---

[51] *Id.*

[52] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[53] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[54] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[55] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country. Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation. And ICE's second scheme doesn't fare much better. Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country. Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections apply. So this process does not comport with the fundamental requirements of due process.

I also find that Hassan is likely to face a due-process violation from this policy. He currently cannot be removed to Sudan because removal to that country has been deferred. So if the government continues seeking his removal, it will likely be effectuated under its unconstitutional third-country-removal policy. I thus grant Hassan's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Hassan with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

///

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Salah Hassan's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 8] is GRANTED**.  Petitioner **Salah Hassan must be released from detention immediately, subject to the conditions of his preexisting order of supervision.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel

(1) notice of the date, time, and location of Hassan's release at least 24 hours before the release is set to occur, and

(2) notice that Hassan's release was effectuated within three days of this order.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Salah Hassan absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Salah Hassan to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents must immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that the respondents' motion to extend time **[ECF No. 16] is GRANTED.**

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 24, 2026